We have six cases on the calendar today, four of them being argued cases and two of them submitted cases. I will just note for the record the two submitted cases. The first one is number 05-3280, PEPO versus the Department of the Treasury. And number 06-3024, Quiambo versus the Office of Personnel Management. Again, those two cases are being submitted. The first case on the argument calendar for this afternoon is number 05-1286, Pixion Incorporated versus Placeware Incorporated. Mr. Yorio, have I got your name pronounced correctly? Yes, Your Honor. Okay. Before we begin, you've reserved three minutes for your rebuttal, correct? I have. Okay, well you can start whenever you're ready. Thank you, Your Honor. May it please the Court, Robert Yorio representing the appellate Pixion Inc. in this appeal. The first issue that I want to address before the Court involves the error we believe committed by the district court in interpreting California law on the pre-discovery disclosure requirement in trade secret cases. Which trade secrets does this affect? You're complaining about the result with respect to four of the trade secrets. There are four categories of trade secrets that we are complaining about that are listed in the opening brief. And I'm a little confused because I thought in your reply brief you said that all of those, you weren't complaining about anything that the jury did. But if I understand correctly, one of the four was the result of a jury brief. No, I don't believe that's correct. Which one do you have in mind when you say that? Well, I thought that was the case with respect to the intelligent dropping of blocks and frames. I thought there was a jury verdict about that. No, there was not. There was not? There was not. The trade secrets that went to the jury. So these four were dismissed on summary judgment? That's correct. The four in the opening brief that we discussed and also review in reply went out on the summary judgment order. And if I understand your contention, it's that you agreed at this pre-trial conference or discovery conference, whatever it was, that you'd comply with California law and that California law didn't require you to do anything more than you did and didn't bar you from supplementing it. And it did not prohibit our showing of the how-to, the details behind the trade secrets, or why selections or approaches or combinations thereof were unique and novel. And the court, unfortunately, held us just to the literal title. And you're contending that affected these four trade secrets that you're now complaining about? Correct. And you never formally supplemented, well, after the first supplement. You never did a later supplement with respect to this California disclosure rule, right? There were two disclosures, a pre-filing disclosure. We refer to it in the brief as initial disclosure. That's June 2002. And then a supplemental disclosure filed in the case. That was the subject. The supplemental disclosure was the subject of the hearing that Your Honor is referring to. Right. So in your contending, you should have been able to go beyond the supplemental disclosure. In terms of details of the trade secrets, what we should not have been allowed to do is identify a completely different trade secret, nowhere referenced in either disclosure, and say, well, now we want to pursue that unless we sought leave to supplement. But within the heading of the trade secrets that we did disclose and did discuss, we should have been permitted to show how they were implemented. But I thought that two of the trade secrets that are involved now were new and that weren't disclosed before in that supplemental disclosure. The combination of techniques to minimize bandwidth requirements in the Unicast-only system, those were, as I understand it, not disclosed originally. I believe there are two errors committed in those areas. One is that the supplemental disclosure But just tell me, am I correct that you're claiming new trade secrets with respect to those two that weren't listed in the supplemental disclosure? We argue that they were referenced in the disclosure. And if you look at the language, including the benefits section, they were listed in the disclosure. They were listed in the initial disclosure. We should have been allowed to introduce evidence in opposing the summary judgment motion. And the court construed the procedural requirement too narrowly with respect to the purpose of the disclosure. But I think the trouble I'm having is I'm not seeing, with respect to these four, where you tried to supplement them in the opposition to the summary judgment motion and where the district court refused to consider such supplementation. Let's turn to one example. The advantages of scraping images and using them over graphic drawing commands. On that issue, we clearly indicate that that was covered and disclosed in the supplemental disclosure. But I thought he barred that one because of public disclosure, not because you hadn't complied with the California statute. Am I correct? Well, the court excluded evidence relating to the selection and the efficacy of the approaches of using screen scraping images from the screen as opposed to the use of graphic drawing commands. Okay, but I think what you need to show is where did the district judge say, I'm not going to consider these four items because you didn't disclose them earlier. That's what was missing to me in the brief. On that particular issue? Well, the four, on each of the four. Okay. With respect to the trade secret that we identified in the opening brief, as the efficacy of screen scraping in a web conferencing system, what the court did not allow us to do there was to demonstrate how and why the conference server optimized communications. Yeah, but where did he say he was doing it because you hadn't disclosed it earlier? In the court's decision on page 12, 12? It's in the addendum to your brief. Right, that's what I was looking for. So addendum? Page 12. Page 12. Under the section one on line 12, court first indicates that Pixion publicly disclosed all these trade secrets. I'll get to that issue in a second. But then, she has a reference, Pixion's further descriptions of A, B, C, and D do not preserve the secrecy of the trade secrets as pled. None of those points, A, B, C, D, was disclosed in any document that place where intended was made available to the public. There's a factual dispute. I may be missing where you're referring. Where does she say, where does the district court say that those weren't disclosed in the supplementary disclosure? On line 22 and 23, she describes the further descriptions in summary fashion, A through D. And then she just concludes that they do not preserve the secrecy of the trade secrets as pled. But they were not in the documents that place where indicated were available to the public. And she prevented, she refused to consider the evidence in support of A, B, C, and D despite the fact that those trade secrets and the methodology were not disclosed. And she could only have done so if she was holding us to the literal language of the disclosure. If those A, B, C, and D are not in any documents made available to the public and they are covered by the trade secrets at issue, why should they have been excluded? I'm having a hard time understanding what's meant by this particular statement here. Are there statements with respect to the other three? Yes, Your Honor. And the issue before the court was, were these documents available to the public? And what was in them? What was disclosed? But that's a different issue. We said these things weren't disclosed, and that is not disputed in the record. She nevertheless refused to consider them in the motion for summary judgment. But I don't want to take up all your time, but what I'm trying to figure out, and it seems to me it's your burden to show that she barred you from presenting evidence because of your noncompliance with the California statute. That's what I'm focusing on. And you say that that appears on line 22 and 23 here. But where does she say that with respect to the other three? My opinion on page 11 in the addendum is this is on lines 12 to 16. And the court states, Periodically throughout its opposition, Pixion contends that while the functionality is listed in the section 2019D statement, it's not the secret that, quote, how to, the court's words, of that functionality is. The court notes that Pixion could have written its section 2019D statement to reflect this difference without revealing the technical details that comprise the trade secrets themselves. She goes on to say that she's not going to allow or consider evidence of the how-to of certain functionalities in opposition to this summary judgment. And in doing so, she violated California law, which interprets Code of Civil Procedure section 2019. Where do we find this statement about being limited with respect to the other three trade secrets that we're dealing with now? With respect to unicast versus multicast transmission, the court concluded that Pixion had not identified Page 12 of the court's opinion. She talks about Pixion's further restriction of sending the compressed images to an intelligent unicast server, and then does not consider the evidence in support of that. And later on Page 15, lines 5-8, she talks about not our contention that Placeware has misstated a trade secret involving the unicast protocol, and she did not consider the evidence in the record about the advantages of unicast transmission, the applicability of using unicast transmission in a public web conference application. And she should have done that, because we clearly talked about how that methodology is practiced. The problem I have is that this is something you should have done in the brief. You should have said, here's the evidence we gave in opposition of the summary judgment with respect to these four trade secrets. She didn't consider it. Here's the proof. She didn't consider it. And to me, that's missing in the brief. That's the problem. Just on this issue, just for example, we have several points. First of all, the supplemental disclosure is broad enough to cover unicast transmission and the advantages of it. And we have cited several points in the disclosure. Appendix 472, 16-28, 473, and 474, and line 25 to 476, line 16, talks about all of the advantages. It's discussed in detail in the brief. We refer to what the evidence submitted in support of that, the Madam's Declaration, and all the paragraphs. They're in the appendix at 16-30 and 34. And we make the point that any reading of the supplemental disclosure on that point compels the conclusion that it was broad enough to cover that trade secret involving the use of unicast transmission. You've completed your argument and you've used up your rebuttal time, but we'll restore your full rebuttal time. Thank you. We'll hear now from a place where Mr. Bettinger. Yes, Your Honor. May it please the Court. What counsel overlooks is all of the information, including all of the details submitted in the Madam's Declaration, which is at 16-30 in the joint appendix, was considered by the jury. All of the information. Well, that's the argument that was considered in support of a different theory. It doesn't do much for me. But the point they're making is that at this conference, pretrial conference or whatever it was, they agreed to do what was required under the California statute, although there might be some question as to whether the California statute would be binding in federal court. But be that as it may, as you point out, they agreed to do. What was required by the California statute. But as I read the California cases, that it does allow some room for supplementation. And if the district court was saying here, I'm not going to consider anything that wasn't part of the original supplementary filing that was the subject of the discussion at the pretrial conference, if that really worked to their disadvantage and barred the judge from considering some of their evidence, that may be a problem. But, Your Honor, that's not what happened in the court below. In response to summary judgment, which was only on, there was a summary judgment on the patent of non-infringement and then there was also a move for summary judgment on the trade secrets, the 28 trade secrets that had been identified saying, look, for two prongs here, they're known in the industry and they're not secret. And we set forth that evidence for the court. In response to summary judgment, Pixian came in and said, oh, Your Honor, there's more detail. And she said, wait a sec, one of the policies, and this is the case that we cite to the court, the computer economics case, one of the policies is on trade secrets, you can't change on the eve of trial, you can't change what your trade secrets are. What California case says that? The computer economics case, 50F sub second 980, cited by the court in the summary judgment order, which is in the record at page 63. And there are four policies behind why the 2019D requirement. But what the court did was say, okay, I'm not going to allow for further, for you to change the trade secrets, I will identify the 28, which is an extensive, in trade secret cases, they have 28 claimed trade secrets is an extensive number. Typically we're four or five, but we had 28 that we addressed. But what is important, I believe, Your Honor, is the court in the pretrial order, this issue came up. What about the trade secrets and what about the confidential information? Because here the parties had contracted that no confidential information could be used, and the standard was broad. It gave more rights to pixie. All they had to show that there was some information. But you're arguing the race to the cutoff point. I think that's a tough road to hop. I really do. But putting that to one side, I mean, about the California statute, where do these California cases say that you can't supplement? You're permitted during the case, you have to show good cause, and in federal court it would be under Rule 26E. Well, that's the good cause requirement just comes out of that one district court case, right? No, there is additional California. We've provided that. The White v. Schlade is like the seminal case on 2019D. It's the IMAX case out of the Ninth Circuit, kind of addressed this very point, where in response to summary judgment there was an attempt to change the trade secret, and the court said, no, you haven't made the requisite showing. It went up to the Ninth Circuit in that particular case. The Ninth Circuit said, look, under 26E, that's not an abuse of discretion on the trade secret issue. Where is that discussed in the brief? The IMAX decision? Yeah. Pages 56 and 57. If I might for the court for a moment on this, I want to hit the confidential information point because the court in the pretrial order went out of its way to say, look, this was a procedural rule I made on 2019D. This isn't barring you from presenting anything. I'm sorry, before you get into that, so if the California cases allow supplementation, what's the standard for supplementation? You're saying it's good cause? Good cause. Is that what the White case said? Yes. And you say they didn't show good cause here? That's correct. They made no showing of providing the detail in response to summary judgment. Typically how that's done is during discovery. As the case unfolds, you'll come in and provide supplement to your statement. In this case, you had the unique circumstance where the whole case issue was framed early on when we moved, saying your original statement didn't have the particularity requirements of 2019D. In response, they provided a supplemental statement and said these were our trade secrets. The court said, all right, these meet the standard. These are reasonably particular. And then we got a representation in your honor, these will be the trade secrets throughout the case then. Well, I don't quite read it that way. What I read them as saying is we'll do what the California statute requires. And if the California statute allows supplementation, then it seems to me that they're fairly read as saying we'll supplement to the extent permitted under the California statute. So what's permitted under the California statute then becomes pertinent. And so when they in effect attempted to supplement in response to the summary judgment, the court said, look, I'm taking you at your word. We're going with the 28. I don't find that you meet the standard to add additional details to these particular trade secrets. Where did the district court say you don't meet the standard for supplementing? I didn't see that. To the extent that the judge said anything, it was that you can't add to what you had before. Well, that's correct. You can't add to what you've done before. But that's a misinterpretation of California law. There is no absolute bar to adding what you had before. Correct. Right. So what you're saying is what she should have said was they didn't show good cause for supplementing. That's correct. On the record, they did not. But she didn't say that. That's the problem. She did not use those words. That is correct. OK. Well, maybe I'm reading a part that's not germane. So maybe I'm entirely wrong. It seems to me like, for example, on ADD 16, I mean, is this relevant where she says under the principles of guidance and computer economics? I mean, is that a reference to what the rules are with respect to 2019D? Yes, Your Honor. And that sets out the four standards. The policy behind 2019D and what the court picked up on is in response to summary judgment, you can't wait to the EVA trial to try and change these. It defeats the whole purpose of what we're doing. And then so she says, allowing Pixian to defend against summary judgment, and this is at the record, page 63 of the appendix, Your Honor, it's the summary judgment order. What page is the summary judgment order? What page is the summary judgment order? 11. 11. 11 of the appendix to the account. And I'm at line 16, Your Honor, where Judge Ilsen says, allowing Pixian to defend against summary judgment by asserting now that its method is secret, even if the functionality disclosed it would defeat the purposes of 2019D, which had been discussed above in computer economics, limiting both Placeworth's ability to defend against a trade secret claim and the court's ability to review the issue of secrecy. But that sounds like an absolute bar. You can't amend, period. You're stuck with what you had earlier. And as you were telling me a few minutes ago, that's not what California law is. No. It's the timing. In response to a summary judgment motion, discovery had closed or on the eve of trial. You can amend these. The case can change as it goes forward. You move the court to amend. It's typically how it's done. You show your requisite good cause for amend, and you come in and you amend the statement. It wasn't done here in the same position that the parties found themselves in the IMAX case that we cite to the court. That in response to summary judgment, they said, oh, wait a second. Here's the real trade secret. It's over here. And the court said, and it's an abuse of discretion standard, and the court said, look, for case management purposes, I'm not going to allow you to do it at this time. You've had plenty of opportunity, as the case has unfolded, to provide that supplemental information. And you didn't do it. So it's not an absolute bar. In this case, the timing at which it arose, and the fact that the parties had gone through over a year of discovery based on those 28 trade secrets, it was the timing that the court was addressing and the policies articulated in the computer economics case. Mr. Benjamin, let me ask you, looking at the, I guess it's volume two of the joint appendix, we have this colloquy in discussion at pages 3149 through 3151. How is that pertinent to what the court has been discussing with you and Mr. Iorio today? This is this discussion about denying your motion, and then Pixian saying they're satisfied they'll stand or fall with their 2910s. Is that pertinent to what we have here today? Yes, it is, Your Honor, because that was an instance of where, just as Judge Dykes has pointed out, where the party supplemented. We had an original list of trade secrets. We said, gosh, this isn't enough specificity. You've got to give us more because this is amorphous. It's all over. So you moved for more. We moved for protective order, no discovery unless we could get a reasonably particular statement. In response to that motion, counsel then came in with this 12-page statement supplementing what they had already provided. And it's that 12-page statement that's been the subject of the discussions today. That's correct. That identified the 28 trade secrets that issue in the case. The court allowed that supplement, allowed that to be the trade secrets going forward. And denied your motion for anything more. Correct. And at that point, we requested to the court, look, we want to be sure that these are the trade secrets. And just to put this in perspective, there had been a four-year history here of, really, what are the trade secrets? And what was underlying all this, and we have a server that does it different than theirs. We don't have this transformation of data types in a server. We just use a pass-through. But you're not contending that they couldn't supplement after that point if that supplementation would be compliant with California law. That's correct. They had every opportunity throughout that one-year period of discovery to further supplement pursuant to the California law. They chose not to do that. They waited until we moved for summary judgment. After discovery had closed. So to then put yourself in that position. Discovery's closed. They're changing the trade secrets. You can't do that. Discovery's closed. We're ready to go to trial. We've now operated on these 28 trade secrets. What is it? No, no, you're finishing your point, Mr. Benter. Don't worry about that. It says, I'm looking at 3151 at line 14, the court. If I deny the motion, meaning your motion, right? The place where? Yeah. You will be left with what you provided, and you're willing to do that. Yes, Your Honor. What are we talking about there? What do they mean they'll be left with that, and they agree to that? Those 28 trade secrets. Because what we ask for the court is, look, Judge, we want a representation that these are going to be it going forward in the case as we proceed. And the court says, well, that's just what counsel said. It's the colloquy back and forth before that. I said, Your Honor, I don't think that's what counsel said. Let's get that representation on the record. At that point, Judge Yeltsin point-blank asked the question. So how does that affect their ability to supplement? How does this colloquy that we're looking at affect their ability to supplement afterwards? Well, there's an argument that in view of this statement, then that is the trade secrets going forward. And one could argue that they've waived their right. But you're not arguing that. You told me a couple of minutes ago that they could supplement to the extent permitted under California law. Right. But I think the court would take into consideration, when moving to supplement, the court would take into consideration what has already been stated by counsel. And that would certainly factor into the court's discretion as to whether they were going to allow it or not. Well, it seems to me, and I don't know if this necessarily helps or hurts, but while this district court did cite some of the cases, some of the principles of the cases, as I read her opinion, and the language on 11, her ultimate decision was based on at lines 12 and 13, that they represented to the court that the statement was complete. And that on that basis, she said, I'm not going to allow anymore because of that representation. No. That is not accurate because what happened is. Wait, you said that's not accurate or not inaccurate? That's not accurate as to what happened because, Your Honor, so the 28 trade secrets, what the defendants did was come in and try to repackage them, even with the headings that were given. So the court allowed them to do that. Plaintiffs came in. That's correct. I'm sorry. Came in and tried to repackage those. So they weren't the identical. They were like, well, look, Judge, here's what's really meant by that. And you know from her opinion that she did allow that and she did consider that. So it wasn't a direct look. You've given me a title. And therefore, that's your trade secret. She allowed plaintiffs to flesh that out for purposes of the summary judgment rule. Mr. Benger, are you at page 53 of your brief, are you making a waiver argument there where at the middle of the page there is the district court noted Pixion expressly represented the court and parties that its 2019D statement was a complete statement of the secrets. The court was right to hold Pixion to its representation. Is that a you making a waiver argument there? Yes, Your Honor. I see that my time is up. I don't get to address the additional point. Well, you've still got to. Oh, yes, your time is up. I'm sorry. I was looking at the clock. Well, no, Mr. Yorio has some additional time, so that's fine. Okay.  Mr. Yorio, again, as I said earlier, you have your full three minutes of rebuttal. Thank you. So they say there's a good cause requirement under the California cases and that your supplementation, which occurred late in opposition of the summary judgment motion, wasn't timely and didn't make any showing of good cause. So what's your answer to that? Is there a good cause requirement under California law, and did you show good cause? We did two things. We first argued that the disclosures, initial and supplemental, were broad enough without supplementation to cover the evidence that we were submitting. The court disagreed with that. Secondly, to the extent it was different, we indicated that we were providing it because it was at least covered by the title or the heading. Well, do you agree that there's a good cause requirement under California law to supplement? To supplement? I think there's case law. I don't think there's a California court of appeal decision that addresses that. They're saying there's a Ninth Circuit decision. It's a Southern District of California decision. It isn't even a Ninth Circuit decision. Well, they say there's also a Ninth Circuit decision. That doesn't stand for that proposition. If you look in the statute. What's your position? Is there a good cause requirement or isn't there? I don't think there's a requirement in the statute. All that's required in the statute, and this is in the advanced modular case, the recent case decided late in the fall last year, was that identify the trade secrets with reasonable particularity. And you are permitted, without a showing of good cause, to bring in evidence of the details, the how-to. But that was during discovery. This is after discovery. At any time. Yeah, but the California case you're referring to was supplementation during the discovery period, right? Well, no. Advanced modular is a case before discovery. Yeah, yeah. But it wasn't after discovery. It closed. Well, the council cited IMAX as a support for their position of waiver. IMAX is completely different. IMAX is during discovery. Discovery responses deemed insufficient in motion practice. Magistrate judge orders further specification. Arguably is not provided. And then it goes up on a dismissal. In our case, there's no discovery dispute. There's no suggestion of any kind. Yeah, but what they're saying, and it seems to have some merit, is that this California statute is designed to provide notice so that there aren't any surprises in discovery and you can't use the discovery to supplement the trade secrets. And what they're saying is once the discovery is over with, as it was here at the summary judgment stage, it's too late to supplement unless there's a good cause showing. Only if there's an issue that comes up in discovery where they are unfairly prejudiced from taking it. That did not happen. Did you make a good cause showing? I believe we did. What was the good cause? The good cause showing was that Mr. Maddams, who is the primary declarant, testified and provided evidence that's contained in his declaration. So nothing that they saw in those declarations. Yeah, but what's the good cause for the delay? Why wait until the 11th hour in opposition to the summary judgment motion before bringing this up? What's the good cause for delaying it until then? The good cause in the district court decision is when you are trying to identify a new trade secret. It does not apply in the situation where you are providing further detail, the how-to that the court excluded absolutely as a trade secret. Mr. Iorio, let me ask you because you've gone over your time, but I'll be greedy and keep you up there for a little bit. What is your response, or I guess I should say the right word is, what is your comment with respect to the colloquy that the panel was discussing with Mr. Bettinger? I have that page. Yeah, 31, what is it, 49 through 51?  That section we were discussing with him. The section that didn't get discussed when you were speaking to Mr. Bettinger was that on 3151, Mr. Hosey's response at lines 1 to 7. Mr. Hosey being Pixian's counsel. Yes, he was co-counsel in the case. So he was opposing the motion for Pixian, and he indicated that the supplemental disclosure, that's what was at issue on that motion, was a detailed table of contents of a book, was the analogy that he wrote. The court adopted that, and then you see the colloquy, and then he says, well, then I'm going to deny the motion. That's sufficient for a table of contents for the book. In opposing the motion, we submit the chapters of the book, the how-to, the methodology. But then the court says, if I deny the motion, meaning the place where motion, you will be left with what you provided, and you're willing to do that. And Mr. Hosey says, yes, Your Honor. As a table of contents, which is exactly what he said not 30 seconds prior to that. That's the context in which that representation occurs. Okay, so your position is that this discussion should be viewed as speaking to what you characterize as a table of contents. That's correct. In other words, he remains entitled to write the book later. That's correct, and we did during discovery. Just one final point on it. No, you did after discovery, not during discovery, right? You didn't tell him until after discovery was paused. We submitted Mr. Adams to deposition. There are no questions that he didn't answer. He explained. No, but you didn't do anything to tell him about how you were supplementing your original supplementary disclosure statement until after discovery was paused, right? Didn't use the word we're moving to supplement. If that's the question. Where did you supply the information? Mr. Adams' deposition. He's asked the question about the advantages of image transmission over graphic drawing. He provides exact testimony about why their approach was unique, what was different about it, and why it was counterintuitive to the state of the art. And he also explained how Mr. Nichols seemed to be surprised that the Pixion system could do that with that type of approach. And they engaged in a whiteboard session. Mr. Nichols does subsequent tests, and it verifies the uniqueness of that approach. That's right in discovery, right in the deposition. It was uncontroverted evidence. The court said, I'm going to disregard that because I'm going to hold you to the table of contents. Thank you, Mr. Iorio. Thank you. The case is submitted. Thank you very much. That we'll hear oral argument in this afternoon is number 05.